Zimmerman, J.
 

 Briefly, the position of Walter H. Davidson is that the lower courts committed error in adding the income of the estate, accruing after the death of William R. Davidson, to the corpus and allowing the debts, costs of administration, etc., to be paid out of the whole; that as a beneficiary under the trust he is entitled to income from the date of testator’s death; that the widow can receive no more than one-
 
 *423
 
 half the estate and that her year’s allowance and the allowance made under Section 10509-54, General Code, must be included in such half; that the income from the entire trust estate should be paid to him (Walter H. Davidson) during his lifetime, and that no acceleration is proper in favor of The Ohio Valley Hospital Association.
 

 The Westminster Presbyterian Church takes the position that in accordance with the intention of William E. Davidson, as evidenced by his will, the trust estate or corpus is divisible into two separate and distinct parts; that Elizabeth J. Stievenart Davidson by her election took absolutely the part in which she was given a life income and hence The Ohio Valley Hospital Association, deriving its rights from that part under the will, is entirely eliminated. From this it is contended that Walter H. Davidson is entitled to receive the income from the entire trust estate so long as he lives, and upon his death the church will take his place.
 

 The widow, Elizabeth J. Stievenart Davidson, is satisfied with the judgments of the lower courts, and desires their affirmance. This is also the position of The Ohio Valley Hospital Association.
 

 Every will construction case is
 
 sui generis,
 
 in the sense that the intent of the testator is to be determined from the particular will under consideration. However, certain general rules have been evolved which are helpful in reaching a solution in an individual case. Thus, in 69 Corpus Juris, 1142, 1143, Sections 2446 and 2^47, the following statements appear:
 

 “A taking against the will by a surviving spouse does not operate to render the estate intestate, and is not allowed to break the testamentary plan further than is absolutely necessary * * * but the will is construed as if it contained no provisions for the renouncing spouse, and distribution is made as if he or she had died. * * *
 

 
 *424
 
 “The rights of beneficiaries under the will are not affected by the widow’s renunciation, except as to the amount to which they are entitled, unless the provisions made for others are so dependent on those made for the widow that on her rejection it is impossible to ascertain the testator’s intention, * * * but as among the other beneficiaries it must be executed as nearly as possible in accordance with the testator’s intention, and a proportionate division should be made, unless after the widow’s portion has been set aside to her the estate is in such a condition that the remaining provisions of the will cannot be carried out according to testator’s intent, in which case it will be disregarded and the remainder of the estate distributed as though testator had died intestate.”
 

 The cases support the above text. In
 
 Rench
 
 v.
 
 Rench,
 
 184 Iowa, 1372, 1376, 169 N. W., 667, 668, the court says: “The widow having rejected the will, its provisions in her behalf must be wholly disregarded. The carving out of the estate of the widow’s distributive share leaves only two thirds of the estate as subject to the provisions of the will. Such two-thirds must be disposed of in accordance with the provisions of the will, and such provisions must be construed in the light of the widow’s rejection thereof.”
 

 In re Grobe’s Estate,
 
 101 Neb., 786, 165 N. W., 252, the second paragraph of the syllabus reads: “Where a widow elects to renounce the provisions made for her in the will of her deceased husband and take under the statute, such election does not render the will inoperative. As between other persons it will be enforced as nearly as may be in accordance with the intention of the testator.”
 

 The same holding is found in
 
 Pittman
 
 v.
 
 Pittman,
 
 81 Kan., 643, 107 R, 235, 27 L. R. A. (N. S.), 602.
 

 Where a widow elects to take against the will of her deceased husband, the legal result is to make the estate distributable as if she had died.
 
 In re Packer’s Estate,
 
 
 *425
 
 291 Pa., 198, 139 A., 868;
 
 In re Kerns’ Estate,
 
 296 Pa., 348, 145 A., 824, 66 A. L. R., 1342.
 

 It is clear in the instant case that the intent of William R. Davidson was to establish a trust out of his entire net estate, to which the legal title was never to vest in any of the designated beneficiaries. The income from such trust estate was to be equally divided into separate and distinct parts, one part going to Walter H. Davidson so long as he lived and then to The Westminster Presbyterian Church, and the other going to Elizabeth
 
 J.
 
 Stievenart so long as she lived and then to The Ohio Valley Hospital Association.
 

 If the
 
 status quo
 
 had been maintained, there would be no difficulty. The will is perfectly plain. The complication arises out of the change in the position of Elizabeth J. Stievenart. She married William R. Davidson and became his widow, exercising in that capacity her right to reject the will and take one-half of his net estate absolutely. She and one-half of the estáte are removed completely from the scene so far as the will is concerned. But the will remains as to the other beneficiaries, and we are left with one-half of the net estate to be disposed of in accordance with the intent of the testator.
 

 The trust cannot be dispensed with; it is the foundation of the testamentary plan. None of the remaining beneficiaries can be ignored; their names are plainly written.
 

 Necessarily placing the part of the estate with which we have to do in the trust, we thereupon become limited to a disposition of the income among three disappointed beneficiaries — disappointed because the widow has departed with one-half of the estate from which they otherwise would have benefited. Can we sequester the entire income from the trust estate and give it to Walter H. Davidson for life? The testator does not say so and we are not permitted to make a will for him. His clearly-defined purpose was to
 
 *426
 
 create a trust unit of such estate as he might have the right to dispose of, from which the income was to flow equally through two distinct channels. Through one channel the stream was to flow first to Walter H. Davidson and then to the church; through the other it was to flow first to Elizabeth J. Stievenart, now removed, and then to the hospital association. The entire stream cannot be diverted through one channel to the exclusion of the other, when the other holds a waiting and qualified recipient. When the widow rejected the will, it was equivalent to her death and we find no good reason here for declining to apply the equitable doctrine of acceleration to give The Ohio Valley Hospital Association the immediate' right to partake of the testator’s bounty provided in its behalf. 16 Ohio Jurisprudence, 495, Section 116; 28 Ruling Case Law, 333, Section 323; 23 Ruling Case Law, 556, Section 103; 69 Corpus Juris, 1143, Section 2448.
 

 The present case is distinguishable from
 
 Stevens, Exr.,
 
 v.
 
 Stevens,
 
 121 Ohio St., 490, 169 N. E., 570, where acceleration was refused because of the contingent character of the remainders there involved.
 

 A case not unlike the instant one in some of its aspects is
 
 Lilly et al., Trustees,
 
 v.
 
 Menke,
 
 126 Mo., 190, 209, 28 S. W., 643, 648, where the court says in the opinion: “Upon the face of the record proper, it appears that Ilett Tobbein, having no children or other descendants, by his last will * * * devised all his estate to his wife, Catherine Tobbein, for her life, remainder of one half to the Catholic church at Lexington; remainder of the other half to the heirs and legal representatives of Catherine Tobbein; and that Catherine Tobbein within one year renounced the provisions of said will in her behalf and elected to take, as and for her dower, one half of said estate absolutely, subject to debts * * *.
 

 “The right of Ilett Tobbein to devise and bequeath his estate was qualified by the right of his wife to
 
 *427
 
 make her election. * * * When Mrs. Tobbein made her election one half of the estate became hers absolutely, unaffected by the provisions of the will. When her election was made and filed as required by law, the will of her husband was operative only upon the remaining one half of the estate he had owned.
 

 “Her election, however, manifestly could not affect the operation of the will as to the other legatees and devisees named therein. It is plain that it was the intention of Ilett Tobbein that his other devisees and legatees should take his estate upon the death of his wife, and upon the termination of her right thereto, and it was and is the duty of the courts to effectuate that intention as far as it can be done and they will not permit it to be frustrated by the election of the widow, which he could not prevent. * * * Accordingly, there remained an undivided half of his estate, after her election, for partition between the Catholic church and ‘the heirs and legal representatives of Catherine Tobbein,’ of which, the church was entitled to one half, and Catherine Tobbein’s ‘heirs and legal representatives’ to a half, or one fourth, each, of the estate of which Ilett Tobbein died seized and possessed. But the circuit court decreed that the Catholic church should take all of said estate that remained after the widow’s election. In this the court clearly committed error.”
 

 This position was reaffirmed in the same case reported in 143 Mo., 137, 44 S. W., 730.
 

 We are familiar with the equitable doctrine of compensation exemplified in
 
 Holdren, Admr.,
 
 v.
 
 Holdren,
 
 78 Ohio St., 276, 85 N. E., 537, 18 L. R. A. (N. S.), 272, wherein the widow rejected the provisions of her deceased husband’s will in her behalf and received a larger portion of his estate by taking under the law, resulting in loss to other beneficiaries, contrary to the intent of the testator. To do justice, the value of the widow’s rejected portion was sequestered from the
 
 *428
 
 remainder of the estate and equitably divided among the beneficiaries so that each might receive in a reduced amount such part of the testator’s estate as was intended for him.
 

 In any proper case, where an estate has been depleted by the widow’s rejection of the will, a court in the exercise of its equitable powers will decree a distribution of such estate among the remaining beneficiaries of similar interests, so that each may as far as possible be given the portion the testator intended he should have.
 

 It is our opinion that the instant case is not one to which the doctrine of compensation is appropriate. Walter H. Davidson could be compensated only out of the income from the trust estate to which The Ohio Valley Hospital Association is entitled. It has suffered a loss, as well' as he, by the election of the widow. No equitable principle demands that it be penalized for his benefit, and the intention of the testator cannot be so construed, for he directed that his estate be placed in trust with an equal division of the income. No source exists from which Walter H. Davidson can be compensated without injury to a beneficiary of equal right. Equity will not intervene in such a situation. On this point attention is directed to the cases of
 
 Lowry
 
 v.
 
 Commerce Trust Co.,
 
 9 F. (2d), 472;
 
 Christian
 
 v.
 
 Wilson’s Exrs.,
 
 153 Va., 614, 151 S. E., 300.
 

 Of course, the argument of plaintiff in error that the widow can take a maximum of not more than one-half of the estate, inclusive of her year’s allowance and the allowance under Section 10509-54, General Code, is without merit. These allowances, in the order mentioned, are a debt and preferred claim, respectively, against her deceased husband’s entire estate, deductible therefrom before determination of the share of the estate to be taken “under the statute of descent and distribution.”
 

 
 *429
 
 As to the position of plaintiff in error that the lower courts erred in adding income from the estate, accruing after the death of William R. Davidson, to the principal, and allowing the executor to make all disbursements and distributions from the whole, we think this was probably a sensible and practical way to dispose of the matter. However, the authorities support plaintiff in error’s position.
 

 It is stated in 2 Perry on Trusts and Trustees (7 Ed.), 939, Section 551, that “The general rule is now well established that when property is devised or bequeathed in trust to pay the income to a person for life or for a limited time, he is entitled to either actual or equitable income from the date of the testator’s death, unless the testator has indicated an intention that the enjoyment of income shall not begin until some later date.” Authorities confirming this general proposition are legion.
 

 In
 
 Matter of Stanfield,
 
 135 N. Y., 292, 294, 31 N. E., 1013, 1014, the court remarks: “When the income of an estate, or of a designated portion, is given to a legatee for life, we think it is clear that he becomes entitled to it whenever it accrues, and if the estate is productive of income from the death of the testator, he can require the executor to account to him for the income from that time. * * * In the present case the bequest is not of a part of the principal of the estate * * * but of that which is to arise or accrue after his death from a specified fund to be set apart for that purpose. It is the income which constitutes the respondent’s legacy. He is not seeking to charge the estate with interest upon his legacy, but is simply endeavoring to secure the legacy itself * * *.”
 

 Other authorities to which attention is directed are 18 Ohio Jurisprudence, 192, Section 147; 28 Ruling Case Law, 355, Section 354;
 
 Will of Leitsch,
 
 185 Wis., 257, 201 N. W., 284, 37 A. L. R., 547;
 
 Detroit Trust Co.
 
 v.
 
 Detroit Trust Co.,
 
 258 Mich., 386, 242 N. W., 738;
 
 *430
 

 Creed, Trustee,
 
 v.
 
 Connelly,
 
 272 Mass., 241, 172 N. E., 106;
 
 Cooke
 
 v.
 
 Meeker,
 
 36 N. Y., 15, 22;
 
 Davis
 
 v.
 
 Brown,
 
 112 Wash., 121, 191 P., 1098;
 
 City Bank Farmers’ Trust Co.
 
 v.
 
 Taylor,
 
 53 R. I., 126, 163 A., 734;
 
 In re Band’s Estate,
 
 103 Pa. Super. Ct., 553, 157 A., 511;
 
 Granger’s Ex’rs & Trustees
 
 v.
 
 Pennebaker,
 
 247 Ky., 324, 56 S. W. (2d), 1007;
 
 Estey
 
 v.
 
 Commerce Trust Co.,
 
 333 Mo., 977, 64 S. W. (2d), 608.
 

 It appears from the record in case No. 24925 that the widow’s year’s allowance and the allowance awarded her by favor of Section 10509-54, General Code, have been paid. It also appears that the executor has paid all claims and debts against the estate, except administration costs and expenses, and that it has held separate and apart from the corpus or principal of the estate all income received since its appointment as executor.
 

 Disbursement and apportionment of
 
 this particular estate,
 
 which in some respects is admittedly arbitrary, should be made by the executor on the following basis: Out of the entire principal or corpus, exclusive of dividends and interest, should be paid the widow’s year’s allowance of $3600 and the allowance of $2500 awarded under Section 10509-54, General Code; the debts and other expenses enumerated in Section 10509-121, General Code, inclusive of the federal estate tax
 
 (Tax Commission, ex rel. Price,
 
 v.
 
 Lamprecht,
 
 107 Ohio St., 535, 140 N. E., 333, 31 A. L. R., 985), the commissions and allowances to which the executor may be entitled, and all attorneys’ fees for which the executor is indebted, as approved by the Probate Court. The remaining principal or corpus should then be divided into two equal parts. Out of the half thereof to be allotted to the trust estate should be paid all state inheritance taxes on account of Walter H. Davidson, The Westminster Presbyterian Church and The Ohio Valley Hospital Association.
 
 Wellman
 
 v.
 
 Cleveland Trust Co.,
 
 107 Ohio St., 267, 140 N. E., 104. Out
 
 *431
 
 of the half to be allotted to Elizabeth J. Stievenart Davidson should be paid all state inheritance taxes with which her share of the estate is chargeable. The interest, dividends and other income received by the executor from the time of its appointment to the time of filing its final account in the Probate Court, should be divided into two equal parts. One part thereof should be paid to the widow. Out of the remaining part so much thereof as accrued prior to July 19th, 1933, the date of the widow’s election, should be paid to Walter H. Davidson. So much thereof as has since accrued should be paid one-half to Walter H. Davidson and one-half to The Ohio Valley Hospital Association. Upon settlement in the manner prescribed, the executor should deliver to the trustee the amount of the estate composing the trust to be administered thenceforth in accordance with the directions of the will, i. e., payment of one-half of the net income therefrom, in quarterly installments, to Walter H. Davidson so long as he lives, and then to The Westminster Presbyterian Church, and payment of the remaining one-half of the net income, in quarterly installments, to The Ohio Valley Hospital Association, beginning immediately after the creation of the trust.
 

 As modified herein, the judgment of the Court of Appeals is affirmed.
 

 Judgment affirmed as modified.
 

 Weygandt, C. J., Stephenson and Wilhcams, JJ., concur.