## VEESER v. STENGLEIN.

1. WILLS—CONSTRUCTION—INTENT.

   The primary rule of construction of wills is to ascertain the true intention of the testator and ascertain it from a consideration of all the provisions of the will in the light of the circumstances surrounding the testator at the time the will was made.

2. SAME—DEATH—VESTING OF ESTATES—INTENT.

   Estates given by will become vested upon the death of the testator, where a contrary intent does not appear.

3. SAME—VESTING OF BEQUEST OF INCOME—DEATH—INTENT.

   A testamentary bequest of the income earned by an estate vests upon the death of the testator where a contrary intent does not appear.

4. ESTATES—VESTING FAVORED.

   Vesting of interests or estates is favored.

5. PERPETUITIES—VESTING OF FUTURE INTERESTS—INCOME.

   Future interests are vested where there is any present interest in the income of a property.

6. WILLS—BEQUEST OF INCOME—POSTPONEMENT OF PAYMENT—VESTED RIGHTS—DEATH OF BENEFICIARY.

   Fact that the testamentary bequest of income permits the postponement of the payment of income bequeathed does not prevent the vesting of the legatee's right to the income, which right to accrued income will continue after the beneficiary's death if it is not limited to his lifetime.

7. SAME—ANNUITIES—VESTED RIGHTS.

   A present and immediate bequest of an annuity creates a vested interest in the annuitant.

8. SAME—ANNUITIES—INCOME—COMMENCEMENT.

   A testamentary bequest of an annuity from income is to be paid from the date of the death of the testator.

---

Constructional preference for early vesting of interests, see 3 Restatement, Property, § 243, comment i.

Generally, elements to be considered in construing a will, see 3 Restatement, Property, §§ 241–245.

When payment of income begins in a trust to pay income to a beneficiary for a stated period, see 1 Restatement, Trusts, § 234.

9. SAME—TRUSTS—INCOME—EXPRESS CONDITIONS SUBSEQUENT.

The beneficiary of the income of a testamentary trust is entitled to the income until the requirements of the trust have been fulfilled and cannot be divested except on express conditions subsequent.

10. SAME—BEQUEST OF INCOME OF TRUST—POSTPONEMENT OF PAYMENT—PREFERENCES.

Under testamentary bequest of income of trust to a friend, an aunt and two uncles of testatrix in which trustee was authorized to delay making payments to the uncles "if necessary * * * but postponed payments shall ultimately be paid when subsequent income is sufficient," intention was evident to make payment ultimately and beneficiaries were entitled thereto, hence income was collectible by personal representatives of beneficiaries for balance of income due at time of their death, preference in payment being accorded to the friend and estate of aunt over living beneficiary uncle and estate of deceased uncle.

Appeal from Iron; Bell (Frank A.), J. Submitted January 8, 1946. (Docket No. 23, Calendar No. 43,220.) Decided March 4, 1946.

Bill by Henry J. Veeser, trustee under the last will and testament of Amalia L. Pryne, deceased, against Margaret Stenglein and others to construe a will. Decree that amounts owing certain annuitants were not payable after their deaths. Charles Frey, R. E. Frey, administrator of the estate of Nannie S. Frey, deceased, and Russell E. Frey, executor of the estate of William E. Frey, deceased, appeal. Reversed.

*Bouck, Hilton & Dempsey* and *Shields, Ballard, Jennings & Taber,* for appellants.

*F. Lloyd Symmonds,* for St. John's Protestant Episcopal Church and Twentieth Century Club, appellees.

SHARPE, J.  This is a bill for the construction of the provision, hereinafter quoted, in the will of Amalia L. Pryne, who died on October 31, 1930, a resident of the city of Iron River, Iron county, Michigan.  The will has been duly probated and administered in part.

After the making of certain specific bequests, which have been paid, the will provides:

"FOURTH : All of the rest and residue of my property, of every kind and description, and wherever situated, and including certain vacant property located on Jackson Boulevard, near the Fair Grounds, in Oshkosh, Wisconsin, which I direct to be sold as soon as practicable (but not including any other real estate) I give, devise and bequeath to HENRY J. VEESER, of Iron River, Michigan, in trust for the uses and purposes hereinafter provided.

"The trustee is hereby given full power to hold said property and to invest, reinvest, buy, sell, encumber and otherwise deal with the trust estate, or any part thereof, the same as I could if living; and may invest in such securities as he may deem proper, regardless of any restrictions on the investment of trust funds imposed by the statutes of any State. Purchasers from or persons dealing with the trustee shall not be required to see the terms of the trust are complied with.

"The trustee, is however, directed to keep said trust estate invested prudently, and from the income he shall pay the sum of $100 per month each to MARGARET STENGLEIN, of Iron River, Michigan, NAN FREY, of Oshkosh, Wisconsin, CHARLES FREY, of Seattle, Washington, and WILLIAM E. FREY, of Oshkosh, Wisconsin.  The said payments to MARGARET STENGLEIN shall cease and determine if she at any time works for, or lives in the same house with, Father Lenhart of Iron River, Michigan.

"In the event that the income from the estate is insufficient to make the said payments in full in any

one year, then I direct that MARGARET STENGLEIN and NAN FREY be given preference, equally with each other, and that CHARLES FREY and WILLIAM FREY be not paid unless said MARGARET STENGLEIN and NAN FREY *are first* paid in full each year. The trustee may delay making payments to CHARLES FREY and WILLIAM FREY, if necessary, to determine whether the income in each year will be sufficient, but postponed payments shall ultimately be paid when subsequent income is sufficient.

"Any income accumulated in any year by the trustee shall be retained and used in any subsequent year, if necessary, in order to make full payments to the beneficiaries.

"The trustee shall use his reasonable discretion in regard to postponing payments and in regard to investing accumulated income.

"Payments to the beneficiaries shall begin the first month after my death but may be postponed until all debts are fully paid, or until the due administration of my estate permits the trustee to start such payments.

"Upon the death of all of said four beneficiaries, the trust shall continue for the benefit of charity and the income from said trust estate, including accumulations, if any, shall be used for such charitable purposes as may be designated by a committee consisting of the persons holding the positions of mayor of Iron River, Michigan, president of the First National Bank of Iron River, Michigan, and principal of schools of Iron River, Michigan. In the event that any person so designated fails to act for any reason whatsoever, the trustee may in his discretion fill such vacancy temporarily by appointment. * * *

"SEVENTH: The trust herein provided for charity under the terms of the fourth paragraph of this will, shall terminate at the end of 20 years from the date of the death of the last survivor of the 4 beneficiaries mentioned. At the end of said 20 years, the trustee shall transfer the entire estate, with all accumula-

tions, to the said EPISCOPAL CHURCH of Iron River, Michigan, providing it is not at that time what is commonly known as 'high' church. If it is at that time 'high' church, or if it [is] otherwise unable or incompetent to receive property, I direct that said trustee transfer the trust estate to the TWENTIETH CENTURY CLUB of Iron River, Michigan, if it is at that time empowered to hold such property for charitable purposes; otherwise the said trustee is directed to transfer the said trust estate to any duly-incorporated charitable organization that he may at his discretion select,—the said charitable organization, or the said church, or said club, receiving said trust estate to be the absolute owner thereof, freed of all trusts or other restrictions."

It appears that, at the time of the execution of testatrix's will, Charles Frey was 60 years of age, Nan Frey was 68 years of age and William Frey was 58 years of age. They were the uncles and aunt of testatrix. Margaret Stenglein was a close friend and housekeeper of testatrix who took care of and nursed testatrix and testatrix's mother up to their respective deaths. William Frey died about April 1, 1935, and Nan Frey died intestate about May 5, 1944. Their estates are being probated in Wisconsin. Margaret Stenglein and Charles Frey are still living. On the date of the commencement of the present suit there was owing to Margaret Stenglein approximately $5,200 and to Charles Frey approximately $15,200. There was due to William Frey at the time of his death approximately $3,500 and to Nan Frey at the time of her death approximately $4,300.

The cause came on for trial and the trial judge filed an opinion stating:

"It appears clear that it is the purpose of the testatrix to make some provision for her living relatives and friends, and to preserve an estate, the in-

come of which is to be devoted to charity in the hands of her known friends, and to leave the corpus of the estate intact for the church organization of which she was a member. It follows, therefor, that the position of the defendants representing charitable interests and the interests of the church must be sustained."

A decree was entered conforming to such opinion.

Defendants R. E. Frey, as administrator of the estate of Nannie S. Frey, deceased, and Russell E. Frey, executor of the estate of William F. Frey, deceased, and Charles Frey appeal and contend that these gifts were vested interests which inure to the beneficiaries and to their estates, and in support of their contention they cite Act No. 211, Pub. Acts 1931 (Comp. Laws Supp. 1940, § 12966–1, Stat. Ann. § 26.47), which reads as follows:

"In all cases where the owner of an expectant estate, right or interest in real or personal property, shall die prior to the termination of the precedent or intermediate estate, if the contingency arises by which such owner would have been entitled to an estate in possession if living, his heirs at law if he died intestate, or his devisees or grantees and assigns if he shall have devised or conveyed such right or interest, shall be entitled to the same estate in possession."

It is the contention of St. John's Protestant Episcopal Church and the Twentieth Century Club that the testatrix intended postponed payments should be ultimately paid to the designated beneficiaries only when subsequent income became sufficient during the lifetime of the beneficiary; and that the estate of such beneficiary would not be entitled to any further payments for the purpose of making up any deficiency occurring during the lifetime of such beneficiary.

The primary rule of construction of wills is to ascertain the true intention of the testator and such intention must be ascertained from a consideration of all the provisions of the will in the light of the circumstances surrounding the testator at the time the will was made. *Kirsher* v. *Todd,* 195 Mich. 297. We have uniformly held that estates given by will become vested on the death of the testator, where a contrary intent does not appear. See *In re Churchill's Estate,* 230 Mich. 148; *Gardner* v. *City National Bank & Trust Co.,* 267 Mich. 270; *Detroit Trust Co.* v. *Stoepel,* 312 Mich. 172.

A bequest in a will of the income earned by an estate is governed by the principle above enunciated. In *Toms* v. *Williams,* 41 Mich. 552, 565, we said:

"While there has been some variance among the authorities concerning the legal distinctions between vested and contingent estates, they chiefly agree, *first* in favoring the vesting of interests, and *second* in treating future interests as vested where there is any present interest in the income of a property. No case could be much stronger than the present in that point of view, because here the whole income vests, subject to an annual charge of a given sum to be taken out of it. The New York cases, which are quite as technical as any others in raising difficulties against perpetuities, are quite clear in favoring construction in aid of vesting."

In the case at bar there is an element of postponement insofar as the payment of income bequeathed is concerned, but this possibility does not change the rule above cited.

In 69 C. J. p. 615, § 1701, it is stated:

"(J) * * * Although the time for payment may be postponed, an immediate and absolute gift of the income from property creates a presently vested right, which will continue even after the bene-

ficiary's death if it is not limited to his lifetime. * * * A present and immediate bequest of an annuity creates a vested interest in the annuitant."

Such income is to be paid from the date of the death of the testator. In *Detroit Trust Co.* v. *Detroit Trust Co.*, 258 Mich. 386, we said:

"The estate was productive of income from the death of testatrix and the amount and rate thereof were found in fact by the trial court and the finding is not questioned. It is not contended that the fund is residuary nor that the testatrix stood *in loco parentis* to the beneficiary. The legacy is of income, not a part of the *corpus* of the estate. And this is true although the will further provides that trustee may, in its sole discretion, use any part of the trust fund for support and maintenance of beneficiary. The gift, as regards the beneficiary alone, is of income. Interest upon a legacy is not here sought. The attempt is to secure the legacy itself, the income of the fund from the death of the testatrix. The beneficiary is entitled to the income whenever it accrues, and, as there has been such net income from the death of the testatrix over the period in question, beneficiary should have it."

It follows that the beneficiary of the income of a testamentary trust is entitled to the income until the requirements of the trust have been fulfilled and cannot be divested except on express conditions subsequent. In the case at bar there is nothing in the testamentary trust which can be construed as an express condition subsequent. The will provided, "The trustee may delay making payments to CHARLES FREY and WILLIAM FREY, if necessary, to determine whether the income in each year will be sufficient, but postponed payments shall ultimately be paid when subsequent income is sufficient."

It seems clear that testator's intention was that postponed payments would eventually be paid to the

beneficiaries. Had she intended otherwise she could have easily provided for such divesting. It follows that the personal representatives of Nan Frey and William Frey are entitled to collect the unpaid payments, the amounts of which are not in dispute. The will provides that Margaret Stenglein and Nan Frey are to be given preference for past due payments. These past due payments should be paid before any payments are made to Charles Frey or the estate of William Frey.

The decree of the trial court is reversed and a decree will be entered in accordance with this opinion. Defendants will recover costs.

BUTZEL, C. J., and CARR, BUSHNELL, BOYLES, REID, NORTH, and STARR, JJ., concurred.